IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

AQUILA ALIYA BADON AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF CLINTON BADON

          Plaintiff,          Case No. 22 -

vs.                              Hon:

UNITED STATES OF AMERCIA

          Defendant.

BRIAN J. MCKEEN (P34123)
J. KELLY CARLEY (P38892)
McKEEN & ASSOCIATES, P.C
Attorneys for Plaintiff
645 Griswold Street, Suite 4200
Detroit, Michigan 48226
(313) 961-4400

## COMPLAINT

### PRELIMINARY STATEMENT

1. Plaintiff's decedent, Clinton Badon, was a resident of the City of Flint, County of Genesee, State of Michigan at the time the malpractice alleged in this matter.

2. Plaintiff brings this action against the Defendant, United States of America under the Federal Tort Claims Act (FTCA), 28 U.S.C. sect. 1346(b), 2671-2680.

3. CHARISSE HOOK, PA-C was a licensed physician's assistant practicing in the City of Flint, County of Genesee, State of Michigan, at the time of the malpractice alleged in this matter.

4. At all times pertinent to the allegations in this Complaint, Hamilton Community Health Network-Main Clinic was deemed a federally supported, Health Center.

5. At all times pertinent to the allegations in this Complaint, the Federally Supported Health Centers Assistance Act of 1992 provided that the FTCA is the exclusive remedy for injuries, including death, caused by employees of a deemed community Health Center.

6. At all times pertinent to the allegations in this Complaint, Charisse Hook, PA-C was an employee, and or agent, express or ostensible, of the Hamilton Community Health Network – Main Clinic, a federally funded community Health Center.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1331 and 1346(b).

- 2 -

8. On or about January 28, 2019, Plaintiff submitted an Administrative Tort Claim to the US Department of Health and Human Services which you did not make a final disposition the claim within six months after it was filed.

9. Venue is properly with this District under U.S.C. § 1402(b) as the acts that are the subject of this Complaint occurred in Genesee County at the time of the malpractice and at that time the Plaintiff's decedent resided in Genesee County.

## PARTIES

10. At all times relevant hereto the Plaintiff's decedent, Clinton Badon, was a resident of the City of Flint, County of Genesee, State of Michigan.

11. At all times relevant hereto, Charisse Hook, PA-C, was an employee and/or agent (express or ostensible) of the Hamilton Community Health Network – Main Clinic.

## FACTUAL ALLEGATIONS

12. The Plaintiff realleges paragraphs 1 through 11 as if set forth fully herein.

13. On January 30, 2017, Plaintiff's decedent presented to the Hurley Medical Center Emergency Department with complaints of severe coughing and shortness of breath when walking.

14. A chest x-ray was taken which showed a large perihilar infiltrate in the left lung.

15. A diagnosis of community acquired pneumonia was made.

16. Mr. Badon was discharged with a prescription for Avelox, and Albuterol inhaler, and prednisone and was to see his primary care physician in one week.

- 3 -

17. On January 31, 2017, Mr. Badon presented to the Hamilton Community Health Network – Main Clinic with shortness of breath, chest pain and pressure.

18. Upon admission, Mr. Badon's oxygen saturation rate was 92%.

19. Mr. Badon received no treatment at Hamilton and was discharged with albuterol sulfate and Levoflaxin.

20. At approximately 4 PM on February 6, 2017, Mr. Badon again presented to the ED at Hurley Medical Center.

21. Upon arrival, Mr. Badon complained of difficulty breathing and was tachycardic and tachypneic.

22. Mr. Badon remained in the ED for proximally three hours without being seen by an emergency medicine physician or mid-level provider.

23. At approximately 6:55 PM, Mr. Badon collapsed with convulsive activity and was found to be pulseless.

24. A code was started but Mr. Badon could not be resuscitated and was pronounced dead at 7:34 PM.

25. An autopsy revealed that Mr. Badon's cause of death was pulmonary embolisms blocking the pulmonary artery and its branches.

## FEDERAL TORT CLAIM ACT – MEDICAL NEGLIGENCE

26. Plaintiff realleges paragraphs 1 through 25 as if set forth fully herein.

27. At all times pertinent hereto, Charisse Hook PA-C, owed a duty to the Plaintiff's decedent, Clinton Badon, to render treatment in a reasonable and prudent manner consistent with the applicable standard of care for a licensed physician's assistant of ordinary skill, judgment, and learning.

- 4 -

28. Notwithstanding her respective duties, Charisse Hook PA-C breached in those duties to Plaintiff's decedent in the following ways:

a) Failing to have pulmonary embolism at the top of her differential diagnosis in light of Mr. Badon's weight, O2 saturation of 92%, shortness of breath, and chest pain;

b) Failing to order initial testing to rule out a pulmonary embolism, including, but not limited to, a d dimer and arterial blood gases;

c) Failing to suggest further testing to her supervisor, including, but not limited to, a CT pulmonary angiography so that a pulmonary embolism could be ruled out;

d) Failing to rule out DVTs in Mr. Badon's lower extremities via a venous duplex or venous Doppler;

e) Failing to properly rule out a pulmonary embolism in light of Mr. Badon's presenting symptoms and clinical presentation;

f) Failing to have Mr. Badon return to the Clinic within 48 hours for further evaluation;

29. As a direct and proximate result of the above breaches in the standard of care by Charisse Hook PA-C, Plaintiff's decedent developed pulmonary embolisms, or had pulmonary embolisms, that went undiagnosed and untreated, thus allowing them to block Mr. Badon's pulmonary arteries, which in turn led to a fatal cardiac arrest.

## DAMAGES

30. Plaintiff realleges paragraphs 1 through 29 as if set forth fully herein.

31. This matter is being brought pursuant to the FTCA.

32. The Estate of Clinton Badon has suffered damages for reasonable medical, hospital, funeral, and burial expenses for which it is liable in damages for Mr. Badon's pain and suffering while conscious between the time of the malpractice his death and his lost wages and/or earning capacity.

33. As a direct and proximate result of the Defendant's malpractice, as set forth above, which caused Mr. Badon's death, his surviving next of kin, have suffered and will suffer in the future the loss of his love, society, companionship, affection, services, and support.

WHEREFORE, the Estate of Clinton Badon, respectfully requests compensatory damages, reasonable attorney fees and costs, and such other relief that is just and appropriate.

Respectfully Submitted:

McKEEN & ASSOCIATES, P.C.

*Brian McKeen*

BRIAN J. MCKEEN (P34123)
J. KELLY CARLEY (P38892)
Attorneys for Plaintiff
645 Griswold Street, Suite 4200
Detroit, MI 48226
(313) 961-4400

DATED: April 28, 2022

- 6 -

## AFFIDAVIT OF MERIT

STATE OF NEW YORK )
                                     ) SS
COUNTY OF NEW YORK )

I, BILL DIENSTAG, PA-C., being duly sworn, states as follows:

1. I am a practicing, certified physician's assistant and licensed to practice in the State of New York.

2. I have been in practice since 1997 and have examined and treated patients with symptoms such as those Mr. Badon displayed both before and after January 2017.

3. I have reviewed the notices of intent sent out in this matter pursuant to MCL 600.2912b; MSA 27A.2912(2).

4. I have reviewed the following medical records for Mr. Badon: the autopsy report; the records for the Hurley Medical Center ED visits of January 30, 2017 and February 6, 2017; and the Hamilton Clinic Records.

5. The standard of care applicable in this matter is that of a reasonably prudent PA-C under the same or similar circumstances as presented in this case.

6. It is my professional opinion, within a reasonable degree of medical certainty, that Charisse Hook, PA-C, and any other medical personnel who saw Mr. Badon at the Hamilton Community Health Network on January 31, 2017, breached the applicable standard of care in the following manner:

1

    a) Failing to have pulmonary embolism at the top of her differential diagnosis in light of Mr. Badon's weight, O2 saturation of 92%, shortness of breath, and chest pain;

    b) Failing to order initial testing to rule out a pulmonary embolism, including, but not limited to, a d dimer and arterial blood gases;

    c) Failing to suggest further testing to her supervisor, including, but not limited to, a CT pulmonary angiography so that a pulmonary embolism could be ruled out;

    d) Failing to rule out DVTs in Mr. Badon's lower extremities via a venous duplex or venous Doppler;

    e) Failing to properly rule out a pulmonary embolism in light of Mr. Badon's presenting symptoms and clinical presentation;

    f) Failing to have Mr. Badon return to the Clinic within 48 hours for further evaluation;

    g) I reserve the right to add to, delete or amend my opinions set forth in this Affidavit at the close of discovery.

7. To have complied with the applicable standard of care Charisse Hook, PA-C, and any other medical personnel, who saw Ms. Badon on January 31, 2017 should have done the following:

    a) To have had a pulmonary embolism at the top of her differential diagnosis in light of Mr. Badon's weight, O2 saturation 92, shortness of breath, and chest pain;

    b) To have ordered initial testing to rule out a pulmonary embolism including, but not limited to, a d dimer and arterial blood gases

    c) To have suggested further testing to her supervisor, including, but not limited to, a CT pulmonary angiography, so that a pulmonary embolism could be ruled out;

    d) To have ruled out DVTs in Mr. Badon's lower extremities before discharging him;

    e) To have ruled out a pulmonary embolism prior to discharging Mr. Badon;

2

f) To have had Badon return to the Clinic within 48 hours for a further evaluation;

g) I reserve the right to add to, delete or amend the opinions in this Affidavit at the close of discovery.

8. As the direct and proximate cause of the PA-C malpractice described in paragraph 6, above, Mr. Badon developed pulmonary embolisms, or had pulmonary embolisms, that went undiagnosed and untreated. This allowed the PEs to block Mr. Badon's pulmonary arteries thus diminishing blood flow to his lungs. This made it difficult or impossible for Mr. Badon's lungs to oxygenate his blood, which in turn led to a fatal cardiac arrest.

9. This Affidavit is filed in accordance with MCL 600.2912d; MSA 27A.2912(4).

BILL DIENSTAG, PA-C

Subscribed and sworn to before me this 27th day of MAY, 2020.

NOTARY PUBLIC

KATHLEEN DEFLAUN
NOTARY PUBLIC, STATE OF NEW YORK
NEW YORK COUNTY
LIC. NO. 01DE6195369
COMMISSION EXPIRES OCT. 20, 2020

3